# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

* * *

| | | |
|---|---|---|
| RONALD LEE ALLEN, | ) | Case No.: 2:10-cv-00857-RLH-GWF |
| | ) | |
| Plaintiff, | ) | **O R D E R** |
| | ) | |
| vs. | ) | *NUNC PRO TUNC* CORRECTION |
| | ) | OF O R D E R # 258 |
| CLARK COUNTY DETENTION CENTER; | ) | |
| CLARK COUNTY, NEVADA; DR. | ) | |
| MCGROREY; NAPHCARE; KITE NURSE | ) | |
| CORNELIUS; NURSE NORMA; REBECCA | ) | |
| NEWMAN, R.N.; DR. RUSSO; and SHERIFF | ) | |
| GILLESPIE, | ) | |
| | ) | |
| Defendants. | ) | |

On February 6, 2012, this Court entered an Order (#258) granting in part and denying in part Defendant NaphCare's motion (#163). The Court is now aware of an inadvertent error in that Order and issues this *nunc pro tunc* correction order for the limited purpose of making the record reflect what the Court intended to express in the original. *See In re Warren*, 568 F.3d 1113, 1116 n.1 (9th Cir. 2009). The Court corrects page 13, lines 4-5 of the original order to read "Allen's only remaining claims against NaphCare are his first, second, third, and fifth causes of action." The Court also removes the extraneous 'E' beginning footnote 2.

* * *

Before the Court is Defendant Naphcare's **Motion to Dismiss** (#163, filed Sep. 1, 2011), Defendants Sheriff Douglas Gillespie and Captain Michael See's **Motion to Dismiss** (#187, filed on Oct. 10), Defendants Dr. Donald McGrorey and Nurse Norma Nevarez's **Motion to**

1

AO 72
(Rev. 8/82)

1  **Dismiss** (#191, filed Oct. 12), Defendants Phillip J. Kohn and William Waters' **Motion to**

2  **Dismiss** (#197, filed Oct. 27), Defendant Clark County's **Motion to Dismiss** (#200, filed Oct. 31),

3  Defendant Dr. Simone Russo's **Motion to Dismiss** (#203, filed Nov. 9), Defendants Nurse

4  Rebecca Newman and Nurse Cornelius **Motion to Dismiss** (#234, filed Jan. 6, 2012), all based on

5  Rule 12(b)(6) of the Federal Rules of Civil Procedure, and Defendants Sharon Aungst, Jerry

6  Brown, Jr., California Department of Corrections and Rehabilitation, Randy Grounds, and Arnold

7  Schwarzenegger's **Motion to Dismiss** (#236), based on Rule 12(b)(1) and (6).  The Court has also

8  considered the oppositions and replies to these motions.

9  **BACKGROUND**

10  This dispute arises out of Plaintiff Ronald Lee Allen's claim that Defendants failed

11  to treat his medical conditions while he was in their custody.  Allen makes the following

12  allegations in support of his claims.  In October 2009, Allen was being detained as a pre-trial

13  detainee at the Correctional Training Facility in Soledad, California.  While detained in Soledad,

14  Allen was scheduled for surgery to repair two broken fingers, replace a tendon in his ring finger,

15  and address a hairline fracture in his wrist.  He was also scheduled for a subsequent shoulder

16  surgery. However, Allen was extradited to Nevada before these surgeries took place.  Allen was

17  sent to the Clark County Detention Center ("CCDC") in Las Vegas, and, at the conclusion of the

18  underlying criminal case, he was transferred to the Southern Deseret Correctional Center

19  ("SDCC"), north of Las Vegas.  Personnel at both the CCDC and the SDCC failed to provide

20  Allen with the medical treatment he needed.  Eventually, Allen was transferred to the Northern

21  Nevada Correctional Center ("NNCC") so that he could see a hand specialist, but personnel at the

22  NNCC also failed to provide Allen with needed treatment.

23  Allen filed suit in this Court in June 2010, and has now filed a third amended

24  complaint (#238), asserting eight causes of action: (1) Eighth Amendment cruel and unusual

25  punishment; (2) failure to train; (3) Entity Liability–Policy/Procedure/ Custom; (4) negligence; (5)

26  intentional infliction of emotional distress; (6) negligent infliction of emotional distress; (7)

AO 72
(Rev. 8/82)

1    mandatory injunctive relief; and (8) punitive damages.  Defendants have filed various motions to

2    dismiss, which, for the reasons discussed below, the Court grants in part and denies in part.

3                                              **DISCUSSION**

4    **I.      Legal Standard**

5             A court may dismiss a plaintiff's complaint for "failure to state a claim upon which

6    relief can be granted."  Fed. R. Civ. P. 12(b)(6).  A properly pled complaint must provide "a short

7    and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P.

8    8(a)(2).  While Rule 8 does not require detailed factual allegations, it demands "more than labels

9    and conclusions" or a "formulaic recitation of the elements of a cause of action."  *Ashcroft v. Iqbal*,

10   129 S. Ct. 1937, 1949 (2009) (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).  "Factual

11   allegations must be enough to rise above the speculative level."  *Bell Atlantic Corp. v. Twombly*,

12   550 U.S. 544, 555 (2007).  Thus, to survive a motion to dismiss, a complaint must contain

13   sufficient factual matter to "state a claim to relief that is plausible on its face."  *Iqbal*, 129 S. Ct. at

14   1949 (internal citation omitted).

15            In *Iqbal*, the Supreme Court recently clarified the two-step approach district courts

16   are to apply when considering motions to dismiss.  First, a district court must accept as true all

17   well-pled factual allegations in the complaint; however, legal conclusions are not entitled to the

18   assumption of truth.  *Id*. at 1950.  Mere recitals of the elements of a cause of action, supported only

19   by conclusory statements, do not suffice.  *Id*. at 1949.  Second, a district court must consider

20   whether the factual allegations in the complaint allege a plausible claim for relief.  *Id*. at 1950.  A

21   claim is facially plausible when the plaintiff's complaint alleges facts that allows the court to draw

22   a reasonable inference that the defendant is liable for the alleged misconduct.  *Id*. at 1949.  Where

23   the complaint does not permit the court to infer more than the mere possibility of misconduct, the

24   complaint has "alleged—but not shown—that the pleader is entitled to relief."  *Id*. (internal

25   quotation marks omitted).  When the claims in a complaint have not crossed the line from

26   conceivable to plausible, plaintiff's complaint must be dismissed.  *Twombly*, 550 U.S. at 570.

**II.     Analysis**

    **A.     Naphcare**

       Naphcare seeks dismissal of Allen's Fourth, Fifth, Sixth, Seventh, and Eighth causes of action, as they have been asserted against Naphcare.  The Court will discuss each in turn.

       **1.     Negligence**

       Allen alleges that after he was extradited from California to the CCDC in Las Vegas, NaphCare personnel told him that pursuant to NaphCare's policy against treating inmates with pre-existing conditions, and because of budgetary concerns, he would not receive treatment for his hand.  Consequently, Allen alleges, NaphCare personnel deliberately and repeatedly ignored, disregarded, and/or cancelled appointments resulting from numerous referrals written by a Dr. Jim Zinser and others.  Allen also alleges that the other Defendants—officials and employees at the other facilities in which he was detained (the CDCR, SDCC, and NNCC)—also deliberately prevented him from receiving needed medical treatment.

       The Court finds that these allegations do not state a claim for negligence against any of the Defendants.  Although Allen styles this cause of action "negligence," and despite the fact that he pleads the elements of negligence, the conduct that Allen describes in this cause of action is not negligent conduct—it is intentional conduct.  Indeed, Allen describes NaphCare and the other Defendants' conduct as deliberate, repeated, and purposeful.  Allen bases his § 1983 and intentional infliction of emotional distress claim's off of the same *intentional* conduct.  However, "[a]ny given act may be intentional or it may be negligent, but it cannot be both.  Intent and negligence are regarded as mutually exclusive grounds for liability."  Dan B. Dobbs, *The Law of Torts*, § 26.  Therefore, because Allen's negligence claim—his fourth cause of action—is based off of intentional conduct, the Court finds it fails to state a valid claim for negligence and dismisses it as to all Defendants.

///

///

AO 72
(Rev. 8/82)

2.      **Intentional Infliction of Emotional Distress**

To state a valid claim for intentional infliction of emotion distress, plaintiff must adequately allege (1) that defendant's conduct was extreme and outrageous with either the intention of, or reckless disregard for causing emotional distress to plaintiff, and (2) that plaintiff suffered severe or extreme emotional distress as the actual or proximate result of defendant's conduct. *Dillard Dep't Stores, Inc. v. Beckwith*, 989 P.2d 882, 886 (Nev. 1999).

As discussed above, Allen alleges that Defendants' failure to provide him with treatment was intentional and malicious, and done with the purpose of causing Allen to suffer humiliation, mental anguish, and emotional and physical distress.  The Court finds that Allen asserts a valid claim for IIED.  The facts Allen alleges are that he had two broken fingers, a hairline fracture in his wrist, a shoulder injury, and a tendon on his ring finger that needed to be replaced, and that Defendants refused to provide him with treatment for these conditions despite their knowing that doctors had scheduled appointments and even surgeries to address them.  These alleged facts allow the Court to draw the reasonable inference that NaphCare's conduct was extreme and outrageous because the deliberate failure to allow an inmate in such a condition to receive medical treatment could plausibly be viewed as extreme and outrageous.  It is also reasonable to infer that Allen suffered severe distress because not only were his fingers already allegedly broken, but also because he alleges his condition was exacerbated as a result of NaphCare's conduct.  Therefore, the Court denies NaphCare's motion with respect to Allen's IIED claim.

///
///
///
///
///
///

AO 72
(Rev. 8/82)

### 3.      Negligent Infliction of Emotional Distress

Both parties fundamentally misunderstand NIED claims.[1]  To bring an NIED claim, a *bystander* must have been "located near the scene," "emotionally injured by the contemporaneous sensory observance" of the acts, and "closely related to the victim."  *Grotts v. Zahner*, 989 P.2d 415, 416 (Nev. 1999) (emphasis added).  As this Court has repeatedly held, direct victims may not bring NIED claims as they are not bystanders.  *See, e.g.*, *Kennedy v. Carriage Cemetery Serv., Inc.*, 727 F. Supp. 2d 925, 934–35 (D. Nev. 2010).  As Allen is a direct victim of Defendants alleged misconduct, his NIED claim must fail.  Therefore, the Court dismisses Allen's NIED claim as to all Defendants.

### 4.      Mandatory Injunctive Relief and Punitive Damages

Allen's seventh cause of action is for a permanent injunction requiring Defendants to train personnel at their respective facilities regarding the constitutional requirements to provide medical treatment to inmates who cannot seek their own treatment.  His eighth cause of action is for punitive damages.  The Court dismisses both of these claims as to all Defendants because they are forms of relief, not causes of action.  *Desert Palace, Inc. v. Ace Am. Ins. Co.*, No. 2:10-cv-01638-RLH-LRL, 2011 U.S. Dist. LEXIS 21603, *11 (D. Nev. Mar. 1, 2011); *Sands v. Wynn Las Vegas, LLC*, No. 2:10-cv-00297-RLH-PAL, 2010 U.S. Dist. LEXIS 57048, *5–6 (D. Nev. June 9, 2010).  If Allen succeeds on his underlying claims he may very well be entitled to injunctive relief or punitive damages, but it is not necessary to assert either as a cause of action to obtain such relief.

---

[1] These parties, as well as many parties that come before the Court, confuse negligence claims with parasitic emotional distress damages with claims for NIED.  The two causes of action, negligence with emotional distress damages and NIED, are simply not the same.  Many attorney's have misinterpreted the Nevada Supreme Court's decision in *Shoen v. Amerco, Inc.*, 896 P.2d 469, 477 (Nev. 1995), wherein the court held that direct victims of negligence could obtain emotional distress damages.  This decision did not do away with the bystander requirement for NIED claims, it merely held that plaintiffs pleading negligence may obtain emotional distress damages just as NIED claimants may.  *Id.*; *see also Carriage Cemetery*, 727 F. Supp, 2d at 934–35 (explaining the Nevada Supreme Court's holding in *Shoen*).

1

      **B.**     **Sheriff Gillespie and Captain See**

2

          **1.**     **Section 1983**

3

      Allen sues Sheriff Gillespie and Captain See under § 1983 in their official

4

capacities claiming that they had final decision-making power for the CCDC.  However, a § 1983

5

claim against a state or municipal official in her official capacity is treated as a claim against the

6

entity itself.  *Kentucky v. Graham*, 473 U.S. 159, 165–66 (1985).  Therefore, because the Las

7

Vegas Metropolitan Police Department ("Metro") is the entity responsible for operating the

8

CCDC, and given the fact that Allen has now named Metro as a Defendant, his claims against

9

Gillespie and See in their *official* capacities are redundant, and, as such, dismissed.

10

      Allen also sues See under § 1983 in his individual capacity.  "[T]o establish

11

personal liability in a § 1983 action, it is enough to show that the official, acting under color of

12

state law, *caused* the deprivation of a federal right."  *Id.*  Allen alleges that See appeared in Allen's

13

state criminal case and acknowledged, during that appearance, that CCDC was not providing Allen

14

with needed medical treatment.  Allen also alleges that See is responsible for implementing the

15

policies that caused Allen's constitutional deprivations.  These allegations allow the Court to draw

16

the reasonable inference that See had the responsibility to provide inmates at CCDC with medical

17

treatment and despite knowing of Allen's condition he decided to do nothing about it.  These

18

allegations are sufficient to establish a § 1983 claim against See in his *personal* capacity.

19

However, the Court notes that evidence of more direct involvement by See as the official

20

responsible for implementing said policies will be necessary for this claim to withstand a summary

21

judgment motion.

22

      **2.**     **IIED**

23

      Given the above rulings, the only state law claim remaining against Gillespie and

24

See is Allen's IIED claim.  As a preliminary matter, the Court dismisses Allen's IIED claim

25

against Gillespie because there is no allegation that Gillespie even knew about Allen's condition

26

while at the CCDC.  Accordingly, the Court dismisses Gillespie from the case.

AO 72
(Rev. 8/82)

1    See argues that he is entitled to immunity from Allen's IIED claim under NRS

2    41.032(2), which precludes an action from being brought against an officer of the state, or any of

3    its agencies or political subdivisions, which is based upon the exercise or performance of a

4    discretionary function or duty on the part of said officer.  The Court finds that See is the kind of

5    officer intended to be covered by this statute, so the only question remaining is whether his alleged

6    misconduct constituted an exercise of discretion.  The Court finds, at this point, that it did not.

7    Nevada uses a two-part test to resolve discretionary immunity questions.  *Martinez*

8    *v. Maruszczak*, 168 P.3d 720, 729 (Nev. 2007).  To fall within the scope of discretionary

9    immunity, a decision must (1) involve an element of individual judgment or choice, and (2) be

10   based on considerations of social, economic, or political policy.  *Id*.  Thus, this immunity does not

11   apply when a policy specifically prescribes a course of conduct for an employee to follow.  *Vickers*

12   *v. United States*, 228 F.3d 944, 950 (9th Cir. 2000).  The Ninth Circuit has held that "decisions

13   relating to the hiring, training, and supervision of employees usually involve policy judgment." *Id*.

14   The defendant bears the burden of showing that discretionary immunity applies in the case.  *Id*.

15   Allen alleges that See's misconduct was two-fold: it consisted of (1) training

16   personnel at CCDC to implement the policies that deprived Allen of needed medical treatment and

17   (2) the implementation of those policies himself.  The Court finds that See has not adequately

18   demonstrated that discretionary immunity applies in this case.  Given the lack of specificity of

19   See's arguments regarding this issue, it is entirely reasonable for the Court to assume that he was

20   required to train his subordinates to implement the policies at issue, and that he was required to

21   implement the policy himself, leaving no discretion on his part.  Therefore, with the information

22   presently before it, the Court finds that discretionary immunity does not apply.

23   The Court further finds that Allen has adequately plead an IIED claim against See.

24   Again, Allen claims that See knew the CCDC was not providing Allen his needed treatment, and

25   that See was in a position of authority to do something about it but decided not to.  This allegation

26   is sufficient to allow the Court to reasonably infer extreme and outrageous conduct on See's part.

AO 72
(Rev. 8/82)

1   Also, as discussed above, given Allen's alleged condition, the Court finds that it is reasonable to

2   infer he suffered, or is suffering, sever distress as a result of See's conduct.  Therefore, the Court

3   denies See's motion with respect to Allen's IIED claim.

4          In summary, the Court denies Defendants Gillespie and See's motion with respect

5   to Allen's § 1983 claim against See in his individual capacity and Allen's IIED claim against See.

6   The Court grants the motion with respect to all other claims against these Defendants.

7          **C.     Dr. McGrorey and Nurse Nevarez**

8                 **1.     Section 1983**

9          The Court grants McGrorey and Nevarez's motion with respect to Allen's § 1983

10  claims against them in their *official* capacity for the same reason it granted Gillespie and See's

11  motion on this issue.  The Court further finds that Allen's *personal* capacity claim against

12  McGrorey and Nevarez survives because, as with the other Defendants, Allen alleges they were in

13  a position to provide him with needed treatment and they refused to because of CCDC and/or

14  NaphCare policy.

15         Furthermore, the Court finds that Allen has plead sufficient facts to support a claim

16  for failure to provide medical treatment.  Such a claim requires Allen to show (1) a serious medical

17  need by demonstrating that failure to treat a prisoner's condition that could result in further

18  significant injury or the unnecessary and wanton infliction of pain, and (2) the defendant's

19  response to the need was deliberately indifferent.  *Conn v. City of Reno*, 591 F.3d 1081, 1092 (9th

20  Cir. 2010).  Allen alleges that he had severely broken fingers, a hairline fracture in his

21  wrist, and other medical problems.  These are serious medical conditions.  Allen also alleges that

22  Nevarez, a nurse with NaphCare, as well as the other Defendants, deliberately failed to provide his

23  needed medical care despite her knowledge that he needed it, and that McGrorey was a final

24  decision-maker for NaphCare and that he trained NaphCare personnel to implement the policies at

25  issue.  Allen essentially alleges he had a serious medical condition and that Defendants'

26  ///

1    deliberately prevented him from being treated for that condition.  The Court finds that these

2    allegations easily satisfy *Iqbal* and *Twombly* with respect to Allen's failure to treat claim.

3                      **2.      IIED**

4                      Again, Allen's only remaining state law claim against McGrorey and Nevarez is his

5    IIED claim. The Court finds that Allen has stated a valid IIED claim against McGrorey and

6    Nevarez for the same reasons discussed above.[2]

7            **D.      Kohn and Waters**

8                      Defendants Kohn and Waters are public defenders who were involved in Allen's

9    representation in the underlying criminal matter.  Allen alleges that their efforts in securing

10   treatment for Allen's conditions were a violation of his constitutional rights.  Specifically, Allen

11   alleges that the judge in the underlying criminal matter was attempting to discover why Allen was

12   not receiving treatment during his detention at the CCDC, and that Kohn and Waters did not

13   adequately comply with the judge's requests.  The Court dismisses Allen's claims against Kohn

14   and Waters.  First, unlike the other Defendants, it was not Kohn and Waters' responsibility to

15   secure Allen's treatment, it was their responsibility to defend him in the criminal case.  Second,

16   the Court finds that even if Kohn and Waters had such a responsibility, the Court cannot

17   reasonably assume their conduct caused Allen's constitutional injuries.  Rather, based on Allen's

18   own allegations, the CCDC Defendants would not have given Allen any treatment anyway even if

19   Kohn and Waters had attempted to secure treatment for Allen.  This lack of causation is fatal both

20   to Allen's § 1983 claim and his IIED claim.  Accordingly, the Court dismisses Kohn and Waters

21   from this case.

22

23

24          [2] Defendants argue that they are immune contractors entitled to immunity under NRS 41.032. The Court
     disagrees.  An immune contractor is a person, corporation, or association which is an independent contractor and
25   which "[c]ontracts to provide medical services for the *Department of Corrections*." NRS 41.0307(3). McGrorey
     and Nevarez work for NaphCare who is contracted to provide services for Metro—not NDOC—at the CCDC.
26   Therefore, Defendants' argument fails and the Court denies their motion as to Allen's IIED claim.

AO 72
(Rev. 8/82)

**E.**     **Clark County**

The Court dismisses Allen's claims against Clark County.  Allen alleges Clark County is responsible for the conduct of the CCDC and NaphCare Defendants in denying Allen medical treatment.  However, pursuant to Nevada law, Metro, and not Clark County, is responsible for the operation of the CCDC.  NRS 211.010, 211.020, 211.030.  Clark County has the limited responsibility to fund the CCDC.  It is true that Clark County entered a contract with NaphCare to provide medical services at the CCDC.  However, Clark County executed that contract on behalf of Metro as its funding agent.  Any review or monitoring of NaphCare's performance under that contract is performed by a Metro officer.  Therefore, the Court finds that Clark County's limited role at the CCDC is insufficient to reasonably assume that it is liable for Defendants' alleged misconduct.

Allen also alleges that Clark County is responsible for the conduct of public defenders Kohn and Waters.  However, as the Court has already dismissed Allen's claims against those Defendants the Court must also dismiss Allen's claim against Clark County based on their conduct.  Accordingly, the Court dismisses all claims against Clark County.

**F.**     **Dr. Russo**

**1.**     **Section 1983**

The analysis for Allen's claims against Russo is essentially the same as that for Defendants McGrorey, Nevarez and See, so the Court need not repeat it.  Allen alleges that Russo was a final decision maker at CCDC, although Allen is not sure who Russo worked for, and that Russo was responsible for implementing the policies previously discussed.  The Court dismisses Allen's § 1983 claim against Russo in his official capacity for the same reasons the Court dismissed the other official capacity claims, and denies Russo's motion as to Allen's individual

///

///

///

1    capacity claim.[3]  Furthermore, the Court denies Russo's motion as to Allen's IIED claim, again,

2    for the same reasons discussed above.

3              **G.    Nurses Newman and Henderson**

4              Again, the allegations against Newman and Henderson are basically the same as for

5    the other individual Defendants providing medical services at CCDC, that is, that Newman and

6    Henderson knew of Allen's condition and, as nurses at CCDC, they deliberately failed to provide

7    needed medical services to him.  Thus, the Court's analysis for Newman and Henderson is the

8    same for the other Defendants above.  Therefore, the only claims remaining against Newman and

9    Henderson are Allen's § 1983 claim against them in their *individual* capacities and Allen's IIED

10   claims against them.  The rest of the claims against Newman and Henderson are dismissed.

11   Finally, the Court once again reminds Allen that in order to survive summary judgment he must

12   demonstrate more direct involvement on the part of these Defendants in order for these claims to

13   get to a jury.

14             **H.    California Defendants**

15             The Court dismisses the California Defendants because it lacks personal

16   jurisdiction over them.  Personal jurisdiction is either general or specific.  General jurisdiction

17   arises when a defendant has continuous and systematic contacts with the forum state such that

18   exercise of jurisdiction over that party is reasonable under due process.  *Helicopteros Nacionales*

19   *v. Hall*, 466 U.S. 414–16 (1984).  Specific jurisdiction arises when a non-resident defendant

20   purposefully directs activities at the forum state and the cause of action arises out of those

21   activities.  *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472–73 (1985).

22             Allen fails to allege sufficient facts for general jurisdiction.  The only alleged

23   contact the California Defendants had with Nevada was the extradition of Allen to Las Vegas.

24   And it is not clear from the complaint that these Defendants had anything to do with the

25   _____

26        [3] Although, Allen will need to present evidence of more direct involvement on the part of the individual
     Defendants in order to survive a motion for summary judgment.

AO 72
(Rev. 8/82)

1    extradition.  Therefore, even attributing the extradition to these Defendants, this single contact

2    alone is grossly insufficient to establish continuous contacts with Nevada.

3            Allen also fails to allege facts sufficient to establish specific jurisdiction.  Allen's

4    allegation against the California Defendants is that they failed to treat him before his extradition to

5    Nevada.  The Court is not convinced that by extraditing Allen to Nevada--the only alleged contact

6    with Nevada by Defendants--the Defendants were purposefully availing themselves of Nevada

7    law.  To the contrary, the extradition to Nevada was required by law and mandatory.  U.S. Const.

8    Art. IV, section 2, clause 2; *Michigan v. Doran*, 439 U.S. 282, 289 (1978).  Therefore, the Court

9    finds that the requirements of due process would not be satisfied by the Court exercising specific

10   jurisdiction over the California Defendants.

11           Therefore, the following Defendants are dismissed from the case: Department of

12   Corrections and Rehabilitation, California Governor Jerry Brown, Jr., Former Governor Arnold

13   Schwarzenegger, Warden Randy Grounds, and Sharon Aungst.

14                                         **CONCLUSION**

15           Accordingly, and for good cause appearing,

16           IT IS HEREBY ORDERED that Naphcare's Motion to Dismiss (#163) is

17   GRANTED in part and DENIED in part.  Allen's only remaining claims against NaphCare are his

18   first, second, third, and fifth causes of action.

19           IT IS FURTHER ORDERED that Gillespie and See's Motion to Dismiss (#187) is

20   GRANTED in part and DENIED in part.  Allen's only remaining claims against either Defendant

21   are his intentional infliction of emotional distress claim against See and his § 1983 claim against

22   See in See's individual capacity.  Gillespie is dismissed from the case.

23           IT IS FURTHER ORDERED that McGrorey and Nevarez's Motion to Dismiss

24   (#191) is GRANTED in part and DENIED in part.  Allen's only remaining claims against

25   McGrorey and Nevarez are his intentional infliction of emotional distress claim against both and

26   his § 1983 claim against both in their individual capacities.

AO 72
(Rev. 8/82)

1            IT IS FURTHER ORDERED that Kohn and Waters' Motion to Dismiss (#197) is

2    GRANTED.  Kohn and Waters are dismissed from the case.

3            IT IS FURTHER ORDERED that Clark County's Motion to Dismiss (#200) is

4    GRANTED.  Clark County is dismissed from the case.

5            IT IS FURTHER ORDERED that Russo's Motion to Dismiss (#203) is GRANTED

6    in part and DENIED in part.  Allen's only remaining claims against Russo are his intentional

7    infliction of emotional distress claim and his § 1983 claim against Russo in his individual

8    capacity.

9            IT IS FURTHER ORDERED that Defendants Newman and Henderson's Motion to

10   Dismiss (#234) is GRANTED in part and DENIED in part.  Allen's only remaining claims against

11   Newman and Henderson are Allen's § 1983 claims against them in their *individual* capacities and

12   Allen's IIED claims against them.

13           IT IS FURTHER ORDERED that the California Defendants' Motion to Dismiss

14   (#236) is GRANTED.  The following Defendants are dismissed: Department of Corrections and

15   Rehabilitation, California Governor Jerry Brown, Jr., Former Governor Arnold Schwarzenegger,

16   Warden Randy Grounds, and Sharon Aungst.

17           Dated: February 7, 2012

18

19                              _____

20                           **ROGER L. HUNT**
                           **United States District Judge**

21

22

23

24

25

26

AO 72
(Rev. 8/82)